IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:13CR278 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | **GOVERNMENT'S RESPONSE TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| JEREMY A. MACK, | ) | **CONTINUE TRIAL, MOTION FOR** |
| | ) | **GAG ORDER, MOTION TO SEAL** |
| Defendant. | ) | **DOCKET** |

Now comes the United States of America, by and through its counsel, Steven M. Dettelbach, United States Attorney, and Assistant United States Attorneys Bridget M. Brennan and Carol M. Skutnik, and hereby responds to Defendant's motion to continue the trial; gag the attorneys (past and present) from speaking about his case; and to seal the docket in this matter. The government will address each of Defendant's requests in turn.

**1.**     **Defendant is Not Entitled to a Four-Month Delay of the Trial in This Matter.**

Once again Defendant is attempting to delay these proceedings.  As the Court knows, this is not the first time that Defendant has requested a lengthy continuance in order to prepare for trial.  Indeed, Defendant's prior counsel made similar requests on his behalf, and while that pattern has continued with newly appointed counsel, his recent requests for a continuance have all focused on the same length of time – four months.

On November 22, 2013, Defendant asked the Court for an additional four months to prepare for trial in this matter – despite the fact that discovery had been produced *months* before, that he had been given access to a laptop computer at NEOCC on which to listen to his own recorded jail calls, and that this matter involved vulnerable victims, including one minor victim. Another request for a four-month continuance was submitted on January 6, 2014, when Defendant argued that his attorneys needed more time to prepare this case because jurors will not be familiar with the kind of illegal enterprise he operated.   (ECF#92: Renewal Motion for Court Appointed Female Counsel and Motion for Four Month Continuance).

Notably, even the passage of time has not changed Defendant's singular focus to delay the trial for "four" additional months.  Defendant has demonstrated a willingness to make any number of absurd assertions in order to delay the inevitable – all while using the additional time to obstruct justice, violate the Court's no contact order, tamper with witnesses, and attempt to taint the jury pool.  Defendant does not need more time to prepare for trial.  What he needs, from his perspective, is more time to obstruct justice.  Thus, for this reason and the reasons set forth below, a continuance of any length of time should be denied.

> **2.      The Article Has Not Created Prejudicial Pretrial Publicity, and Any Concerns Could Easily be Remedied During Voir Dire and with Jury Instructions.**

Defendant complains that pretrial publicity has tainted these proceedings and that he is entitled to a four-month continuance in order to protect his Sixth Amendment right to a fair trial. While defendant makes a cursory mention of a change of venue, the crux of his argument is that a January 14, 2014 Cleveland Plain Dealer article ("Article") addressing the conduct of others, namely his prior counsel, has made it impossible for a fair and impartial jury to be selected for his trial on February 7, 2014.

2

"[P]retrial publicity, even pervasive, adverse publicity [] does not inevitably lead to an unfair trial." *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 609 (2d Cir.), cert. denied, 488 U.S. 946, 109 S. Ct. 377, 102 L. Ed. 2d 365 (1988). "It should not be overlooked that a jury need not consist of persons entirely ignorant of the case they are about to hear; all that the Constitution requires is a jury that is impartial, one that is capable of fairly deciding on the evidence before it whether defendants are innocent or guilty." *Id.*

A gag order is a prior restraint on free speech. "A prior restraint on Constitutionally protected expression, even one that is intended to protect a defendant's Sixth Amendment right to trial before an impartial jury, normally carries a heavy presumption against its Constitutional validity." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 570, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976). This rigorous standard is not without limitation, and less restrictive measures must be considered: "This Court has stated that before a district court issues a blanket prior restraint, it must, *inter alia*, 'explore whether other available remedies would effectively mitigate the prejudicial publicity,' and consider 'the effectiveness of the order in question' to ensure an impartial jury." *United States v. Walker*, 890 F. Supp 954, 956-57 (10th Cir. 1995) (gag order not warranted, in part, because voir dire and jury instructions would effectively mitigate the effect of any pretrial publicity), *quoting United States v. Salameh*, 992 F.2d 445, 446-47 (2d Cir. 1993) (gag order vacated because it was not narrowly tailored and district court did not consider less restrictive means); *see also Dow Jones & Co., Inc.*, 842 F.2d 603, 611 (2d Cir.), *cert. denied*, 488 U.S. 946, 109 S. Ct. 377, 102 L. Ed. 2d 365 (1988) (district courts must consider less restrictive alternatives to prior restraints on free speech and, absent the effectiveness of those, may order limitations on speech); *In re Application of the New York Times Co.*, 878 F.2d 67, 68

(2d Cir. 1989) (*per curiam*) (vacating district court's gag order because there had been no showing that prejudice was likely to result from the statements counsel made to the press).

Available remedies to be considered prior to ordering a blanket restraint on free speech include: "change of venue, trial postponement, a searching voir dire, emphatic jury instructions, and sequestration of jurors."  *Dow Jones & Co., Inc.*, 842 F.2d at 611.  Each of these remedies "must be explored and ultimately rejected as inadequate – individually and in combination – as a remedy for prejudicial publicity before a restraining order is entered."[1]  *Id.*  Indeed, "some combination of preventative measures short of a restraining order usually achieves this goal."  *Id.*

Accordingly, an allegation of prejudicial pretrial publicity and a request for a gag order requires that courts consider the following questions:

- Has media publicity created an atmosphere where the integrity of the proceedings, namely a defendant's Sixth Amendment right to a fair trial, is in question?

- If so, are there remedial measures that may be imposed short of issuing a prior restraint on free speech?

- If the answer to that question is "no," is it necessary to issue a narrowly tailored gag order?

Thus, it is necessary to first consider the "pretrial publicity" about which defendant complains before considering what, if any, remedial measures might mitigate any harm to Defendant before imposing a gag order.

### A.    One Article About the Alleged Conduct of Third Parties Has Not Prejudiced Defendant's Right to a Fair Trial.

Defendant wildly overstates the effect that this Article could have on his right to a fair trial.  Defendant argues that this *one* Article, appearing in the Cleveland Plain Dealer on January 14, 2014 and focusing on his prior counsels' alleged misconduct, has nevertheless tainted the

---

[1] Defendant incorrectly seeks both a remedial measure (trial postponement) and a gag order.

potential jury pool *in this matter* such that the Sixth Amendment mandates a four-month continuance so that prospective jurors have sufficient time to forget about the publicity before *his* guilt or innocence is determined.  Even if this Article about prior defense counsel amounted to "pretrial publicity" in this criminal case – which it does not – it certainly does not amount to the kind of pretrial publicity that may prejudice Defendant's right to a fair trial.

### B. The Article was Published in the Cleveland Plain Dealer.

Further, the Article was in the Cleveland Plain Dealer, not the Akron Beacon Journal. The presiding Court is not located in Cuyahoga County.  Nor is it located in Lorain County where most of Defendant's conduct occurred.  Defendant's trial is occurring in Akron, providing Defendant with access to a separate jury pool of individuals who reside outside of Cuyahoga and Lorain Counties, which necessarily "dilutes the media's impact" on the proceedings and jury pool.  *Skilling v. United States*, 130 S. Ct. 2896 (2010).

Accordingly, there is insufficient evidence of the kind of "pretrial publicity" that warrants consideration of remedial measures, let alone a prior restraint on speech.

### 3. Not Surprisingly, Defendant Only Wants This Court to Consider One Remedial Measure – Delaying the Trial of this Matter.

For the reasons set forth above, Defendant has not demonstrated that there has been pretrial publicity that warrants consideration of remedial measures to protect his Sixth Amendment right to a fair trial.  Nevertheless, assuming *arguendo* that the Article could be considered "prejudicial pretrial publicity," the Court may impose remedial measures that do not further delay this trial, and that are more likely to protect Defendant's Sixth Amendment right to a fair trial.  Specifically, a rigorous voir dire, admonitions to the jury regarding internet research and media coverage, or specific jury instructions are more than sufficient to address the competing interests here – the Defendant's right to a fair trial on one hand, and the public's

interest in fair and efficient Court proceedings and the victims' interest in a timely resolution on the other hand.[2]

**4.     The United States Attorney's Office was Not a Source for the Article.**

Defendant states in his Motion that "[i]t appears both sides of this issue [prior defense counsels' alleged misconduct] are giving interviews [and that] documents are being accessed" and provided to the media.  To be clear:  The United States Attorney's Office was not a source for the Article.  In fact, the Article accurately reflects that the United States Attorney's Office declined to comment.  And to the extent the Article references "statements" attributed to government counsel, those statements are identified in the Article as being pulled from court filings, primarily the government's motion regarding prior counsel's continued representation of Defendant.

For this reason, and for the reasons set forth below, the United States Attorney's Office does not oppose the issuance of a gag order, if the Court determines that such an order is necessary, so long as the order applies to all current counsel, all prior counsel, and Defendant.

**5.     Defendant has Been Attempting to Use the Media and Internet Resources to Tamper with Witnesses, Obstruct Justice, and Taint Prospective Jurors.**

Since his May 10, 2013 arrest, Defendant has been soliciting friends and family to create a website so that jurors can Google him and see positive statements about his character.  Indeed, on July 13, 2013, in a recorded phone conversation with his brother, Defendant insisted that his family, with the help of Defendant's friend Dawn, create a website for him.  Defendant told his brother:

---

[2] While the Defendant makes a passing reference to a change of venue, it does not appear that he is actually seeking such a remedy.  Nevertheless, the government notes that he has not provided a sufficient basis for the Court to find that there "is so great a prejudice" that he cannot have a fair trial in this district.  *See Foley v. Parker*, 488 F.3d 387 (6th Cir. 2007).

The jury and everyone is going to be trying to take, uh, a real good look at me when it comes down to it, you hear me?  **So, the jury, they're not supposed to do it, but this is what the jury going to do: they're going to Google me, they're gonna look and try to search and look into me every which way, and I need, I need everything positive up on the Facebook** [which is supposed to be linked to his "website of support"].  So pictures of the family, you know, showing that I'm actually a family man . . . I need that website of support.  Throw a comment on there of your own.  I'm going to do the same.  Just find the name to my website.

(July 13, 2013 Recorded Jail Call to X0604 at 14:43 p.m., time stamped at 13:22 minutes into the 15 minute call).[3]

On November 24, 2013, just two days after the Court appointed new counsel and set the current trial schedule, Defendant wrote to one of his minor sons and asked that the son post a message on the internet.  (*See* November 24, 2013 Letter to J.M., which is marked as Exhibit 1).[4] This message included "shout-outs" Defendant wanted to send to various witnesses in this matter.  Remarkably, Defendant's message also included a "shout-out" to one of the identified victims in this case.  Defendant further advised his son to post Defendant's full message as soon as possible.

On December 8, 2013, Defendant wrote another letter to his minor son advising him that Defendant would be sending weekly messages that the son needed to post on the internet.  (*See* December 8, 2013 Letter to J.M., which is marked as Exhibit 2).  In the letter to his son, Defendant stated, "You are my voice on this.  Through you and this web-site we'll be able to shine light upon the facts of the matter. . . ."  The letter then goes on to say "we have a First-

---

[3] It does not appear that Defendant's website has ever been created, which is why he continues to this day to try and find someone willing to create and manage the website.  And most likely why he continues to push for a "four month" continuance.

[4] The government will provide copies of the exhibits to the Court and defense counsel separately. At the January 29, 2014 hearing the government will move the Court to file these exhibits under seal.

Amendment right to freedom of speech . . . . one of the most highly [guarded] Constitutional rights we have . . . ."  Defendant then advised his minor son as follows:

> As long as I'm not having you contact any of the people I'm not [allowed] to have contact we are good!  I can talk about those on the web-site all day long that I have been court ordered to have no contact with as long as I am not trying to contact them . . . You are allowed to communicate with [them] . . . . So let's get the word out . . .

The Defendant then directed his son to post his message on the internet verbatim.

On December 30, 2013, Defendant sent a seven-page "complaint" to his sister with explicit instructions that she fax that "complaint" to the Elyria Chronicle so that Defendant can address an Elyria Chronicle story that concerned his prior counsel in November 2013.  (*See* December 30, 2013 Letter to B.A., with attachments, which is marked as Exhibit 3).  Defendant describes this "complaint" as something his boys need to read, which evidently includes his son T.L.

That same day, Defendant wrote a letter to T.L.'s girlfriend seeking her assistance with "manag[ing] a web-site of support" for him.  (*See* December 30, 2013 Letter, which is marked as Exhibit 4).  Defendant explained to T.L.'s girlfriend that her commitment to manage his website will *only last until trial*.

These communications illustrate two important points.  First, Defendant is not adverse to pretrial publicity or creating an online presence for himself as long as the publicity and attention he receives inures to his benefit.  Second, if pretrial publicity is so "devastating," perhaps Defendant should reconsider mailing letters to the media and directing others to manage his online website.

8

6.      **The Entire Court Docket and Filings Should Not Be Sealed.**

The First Amendment provides both the public and the press a right of access to criminal trials and proceedings.  *Indianapolis Star v. United States (In re: Fair Finance),* 692 F.3d 424, 429 (6th Cir. 2012).  "As the Supreme Court noted in *Richmond Newspapers*, the First Amendment right of access to criminal proceedings is grounded generally in a 'purpose of assuring freedom of communication on matters relating to the functioning of government.'"  *Id., quoting Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980).  This right of access extends beyond trials and includes other criminal proceedings and records.  *Press Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986).

There is no absolute right of access, but rather a qualified right of access to proceedings and records if the following "experience and logic" test is satisfied: (1) has the proceeding "historically been open to the press and the general public," and (2) "public access plays a significant role in the functioning of the particular process in question."  *Id.* at 8.  Once this test is satisfied, and the qualified right to access attaches to a proceeding or record, the Court may still seal a proceeding or record "if it is essential to preserve higher values' and is 'narrowly tailored' to serve such ends."  *Indianapolis Star*, 692 F.3d at 429, *quoting Press Enterprise*, 478 U.S. at 9.

Defendant seeks to seal the entire docket.  The government assumes that Defendant is also requesting to seal every filing contained therein.  As an initial matter, some records, exhibits and proceedings have already been properly sealed.  To the extent Defendant seeks a sealing order beyond that to include the proceedings and records that are historically open to the public, *i.e.*, the superseding indictment, motions, the minutes of proceedings, and transcripts of

proceedings, Defendant must demonstrate that it is "essential to preserve higher values" and "narrowly tailored to serve such ends." *Indianapolis Star*, 692 F.3d at 429.

Defendant has not made the requisite showing.  First, there is no reason to believe that Defendant's case is any different than other defendants with "public dockets" who have one or even more articles written about them.   Indeed, this Court has recently handled cases that received far more media attention and public scrutiny without sealing the entire docket.[5]  Sealing orders should be narrowly tailored, and yet Defendant does not request a tailored order; he simply wants every document and proceeding sealed.  It appears that Defendant's reason for seeking this sealing order is simply to block media and public access in an effort to avoid publicity that he cannot control.

Accordingly, Defendant has not met his burden of showing that sealing this entire matter is "essential."  For that reason, the government respectfully requests that the Court continue its practice of considering the appropriateness of sealing orders on a filing-by-filing and proceeding-by-proceeding basis.

## CONCLUSION

The government respectfully submits that Defendant's motion for a four-month trial delay be denied.  Any continuance will simply reward Defendant's conduct, and allow him additional time to continue his efforts to taint the jury pool, tamper with witnesses, and otherwise obstruct justice.  With respect to Defendant's request for a gag order in this matter, the government has no objection to a gag order, if the Court determines that one is necessary, so

---

[5] The government submits that the following cases received far more media coverage than Defendant's case:  *U.S. v. Dimora*, NDOH Case No. 1:10CR387; *U.S. McCaffrey*, NDOH Case No. 1:10CR387-002; and *U.S. v. Terry*, NDOH Case No. 1:10CR390.  Incidentally, like Defendant, the media coverage these Defendants received was primarily from the Cleveland Plain Dealer.  And in each of these cases the Court successfully seated fair and impartial juries.

long as the order applies to all current counsel, all prior counsel, and Defendant.  Finally, on the issue of sealing the entire docket, the government respectfully submits that Defendant has not met his burden of showing that sealing the entire docket is "essential."

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:    /s/ Bridget M. Brennan
        Bridget M. Brennan
        Carol M. Skutnik
        Reg. Nos. 0072603/0059704
        Assistant United States Attorney
        United States Courthouse, Suite 400
        801 West Superior Avenue
        Cleveland, Ohio 44113
        Tel. No. (216) 622-3810/3785
        Fax No. (216) 522-2403
        bridget.brennan@usdoj.gov
        carol.skutnik@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January, 2014, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

/s/ Bridget M. Brennan
Bridget M. Brennan
Assistant United States Attorney