**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:13CR278 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| JEREMY A. MACK, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the in limine motion of defendant Jeremy Mack ("defendant" or "Mack") to admit evidence under Rule 412 of the Federal Rules of Evidence (Doc. No. 46). The government has filed a response (Doc. No. 52). Also before the Court is the government's consolidated in limine motion (Doc. No. 45). Defendant has responded to this motion (Doc. No. 51). The Court conducted a motion hearing, which included an in camera proceeding under Fed. R. Evid. 412(c)(2), on October 28, 2013.

## I. BACKGROUND

Defendant was one of two individuals arrested in connection with an alleged sex and drug trafficking conspiracy. The Superseding Indictment alleges that, between December 2012 and April 9, 2013, defendant and co-defendant Ashley Onysko conspired to coerce women into engaging in commercial sex acts. (Doc. No. 19.) The charging instrument identifies four women, set forth as "Victims #1-#4," who were

allegedly coerced into exchanging commercial sex acts for compensation. According to the Superseding Indictment, Victim #2 was a minor at the time of the charged offenses.

The specific charges against defendant include the following: conspiracy to commit fraud, in violation of 18 U.S.C. § 371; sex trafficking of children, and sex trafficking of women by force, fraud, or coercion, in violation of 18 U.S.C. § 1591; distribution of controlled substances, in violation of 21 U.S.C. § 841; and tampering with a witness and obstructing justice, in violation of 18 U.S.C. § 1512. Co-defendant Onysko has entered into a plea agreement, and is expected to testify at Mack's trial as a cooperating government witness.

The force, fraud and coercion alleged to facilitate the sex trafficking included physical violence, threats of violence, and intentional drug addiction. It is the government's theory that Mack supplied Victims #1-#4 with heroin and cocaine— without requiring payment at the time of distribution—to ensure that the victims would need to engage in commercial sex acts to pay off the drug debts they owed to Mack. One or more of the alleged victims will likely testify to this alleged coercion during the government's case-in-chief.

## II.  LEGAL STANDARDS

### A.  Motion in Limine Standard

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and to allow the

parties to focus remaining preparation time on issues that will in fact be considered by the jury. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

Courts should exclude evidence on a motion in limine only when it is clearly inadmissible. *Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). If the court is unable to determine whether certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context. *Id.* Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citing *United States v. Certain Lands Situated in the City of Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982)). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## B. Federal Rules of Evidence

All relevant evidence is admissible and evidence that is not relevant is not admissible. Fᴇᴅ. R. Eᴠɪᴅ. 402. "Evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fᴇᴅ. R. Eᴠɪᴅ. 401. The relevancy standard is liberal. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 587 (1993). Relevant evidence, however, may be excluded if its "probative value is substantially outweighed by the danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fᴇᴅ. R.

EVID. 403.

### III.      DEFENDANT'S MOTION IN LIMINE

By his motion, defendant seeks to offer nine categories of Rule 412 evidence at trial. Rule 412, the federal "rape shield" law, prohibits the use of evidence offered to prove that the victim engaged in other acts of sexual behavior, or had a propensity to engage in such activity. FED. R. EVID. 412(a). The purpose of the rule is to "protect victims of rape from being exposed at trial to harassing or irrelevant inquiry into their past sexual behavior[.]" *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir. 1991). Such protection serves to encourage victims of sexual abuse to report their abusers. *See* FED. R. EVID. 412 (Advisory Notes).

The rule contains three exceptions in criminal cases to the general ban on evidence of prior sexual conduct, two of which are relevant to defendant's motion: "(B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and (C) evidence whose exclusion would violate the defendant's constitutional rights." FED. R. EVID. 412(b)(1)(B) and (C). Of course, even if the proffered evidence fits into one of the exceptions delineated in the rule, it, like all evidence, must still pass the Rule 403 balancing test before it can be admitted at trial.

Defendant represents that evidence that the victims engaged in sexual conduct similar to the commercial acts charged in the Superseding Indictment is relevant to the issue of whether the alleged victims consented to engaging in the charged commercial sex acts, and is, therefore, admissible under Rule 412(b)(1)(B). *See, e.g., Lewis v. Wilkinson*, 307 F.3d 413, 422 (6th Cir. 2002). Alternatively, he argues that this

same evidence is properly admitted under Rule 412(b)(1)(C) because the inability to present this evidence will deprive him of his constitutional right to present a defense.

A criminal defendant enjoys the constitutional right to present a defense, *see Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986), as well as the right to confront his accusers. *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988). Courts have held that, at times, these constitutional rights must yield to the rights of victims of sexual abuse. *See United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009) (constitutional right to present a defense "is not without limitation; it may sometimes have to bow to accommodate other legitimate interests in the criminal process") (internal quotation and citation omitted). The weighing of this constitutional right in light of competing rights requires consideration as to whether the evidence in question is "central to the defendant's claim of innocence," and whether there is a "valid state justification" for its exclusion. *See United States v. Ogden,* 685 F.3d 600, 605 (6th Cir. 2012) (given the strength of the interest to protect rape victims, and the relative weakness of defendant's interest in presenting propensity evidence, constitutional concerns did not require admission of victim's chat logs).

The government concedes that, under Rule 412(b)(1)(B), defendant may offer evidence of other acts of sexual conduct between the alleged victims and him. Specifically, the government does not oppose introduction of the following evidence: cross-examination of Victim #1 on the allegation that she engaged in sexual relations with the defendant in exchange for drugs, whether she told the defendant she was named "Mary Berry", or whether she sought client reviews to garner business and kept a book of regular clients specifically related to the present charges; and cross-examination of

Victim #4 on whether or not she engaged in a consensual relationship with defendant. The Court turns to the disputed categories of evidence.

### A.         Exotic Dancing and Prior Prostitution

Defendant seeks to introduce evidence that Victim #3 previously worked at Christie's Cabaret as an exotic dancer before she met defendant, and that she had prostituted herself for drugs before defendant entered her life.[1] Two cases are especially instructive. In *United States v. Maksimenko*, No. 05-80187, 2007 WL 522708 (E.D. Mich. Feb. 14, 2007), at the sentencing hearing, the defendant sought to cross examine the victims as to their employment as exotic dancers. The government objected, arguing that the fact that the victims were employed as exotic dancers did not necessarily suggest that they implicitly consented to have sex with the defendant. The court agreed, and blocked the line of inquiry, finding that "[a]bsent a showing of relevance, inquiry into either woman's sexual history with persons other than Defendant is expressly prohibited under [Fed. R. Evid.] 412." *Id.* at *3. In so ruling, the court relied on *Saunders*, wherein the defendant filed a pretrial motion for leave to offer evidence that the victim was a

---

[1] At the motion hearing, defense counsel indicated that defendant also wished to offer evidence that Victim #3 exchanged sex for drugs while working at a second establishment known as "Bugsy's." At the time, this belated proffer, made a mere 7 days before the scheduled trial, failed to satisfy the notice requirement in the rule that notice of intent to use Rule 412 evidence be given "14 days before trial unless the court, for good cause shown, sets a different time[.]" FED. R. EVID. 412(c)(1)(B). Courts have held that the notice provision of Rule 412 "is not arbitrary," and a defendant's failure to comply with the notice provision can serve as a sufficient reason for excluding Rule 412 evidence. *See, e.g., United States v. Seymour*, 468 F.3d 378, 387-88 (6th Cir. 2006) (affirming denial of untimely request to introduce Rule 412 evidence); *United States v. Ramone*, 218 F.3d 1229 (10th Cir. 2000) (upholding district court's refusal to allow untimely Rule 412 notice, emphasizing that "the notice requirement contained in the rule also works to protect both the victim and the prosecution against surprise and prejudice due to late disclosure of evidence"). The failure to timely notice this evidence is especially troubling, given the fact that defense counsel identified defendant as the source of knowledge of the vast majority of the proposed Rule 412 evidence. Because the trial was continued, and given the fact that this newly announced evidence is similar in nature to the evidence under consideration in this first category and subject to the same legal analysis, the Court will consider it.

prostitute who had traded sex for drugs with a third party on a prior occasion. The district court excluded the evidence, and the Fourth Circuit affirmed the resulting conviction. In so ruling, the court observed:

> When consent is the issue . . . section (b)(1)(B) [of Fed. R. Evid. 412] permits only evidence of the defendant's past experience with the victim. The rule manifests the policy that it is unreasonable for a defendant to base his belief of consent on the victim's past sexual experiences with third persons, since it is intolerable to suggest that because the victim is a prostitute, she automatically is assumed to have consented with anyone at any time. *Id.* at 392.

The Court finds this analysis persuasive, and rules that evidence in this first category is prohibited by Rule 412, finding also that the exclusion of this propensity evidence does not deprive defendant of his constitutional rights. Additionally, any probative value that this evidence may have is clearly overshadowed by the risk of substantial prejudice pursuant to Rule 403. There is a significant risk that jurors would discredit the testimony of Victim #3 solely because of her prior sexual history.

**B.       Prior Prostitution and Sex for Drugs**

The same rationale applies to defendant's request to offer evidence that "Victim [#]4 prior to, during and after the time period of the offense conduct alleged in the indictment, voluntarily engaged in sexual intercourse with persons other than Mr. Mack for the purpose of obtaining controlled substances[.]" (Doc. No. 46 at 338.) *See United States v. Valenzuela*, 495 F. App'x 817, 820 (9th Cir. 2012) (evidence of prior acts of prostitution was not relevant); *United States v. Graham*, No. 12-CR-311, 2013 WL 321568 (W.D.N.Y. Jan. 28, 2013) (rejecting similar evidence as propensity evidence); *see also United States v. Shamsud-Din*, No. 10CR927, 2011 WL 5118840 (N.D. Ill. Oct. 27, 2011) (defendant was not deprived his Fifth and Sixth amendment rights by exclusion

of evidence that the victims had engaged in prior acts of prostitution, noting that "evidence of prior and post prostitution activities is the equivalent of propensity evidence and irrelevant to the charges"). Notwithstanding defendant's constitutional right to present a defense, evidence that Victim #4 engaged in other sexual acts is classic propensity evidence that is clearly prohibited by Rule 412. Like the prior category, any probative value is also substantially outweighed by the risk of unfair prejudice.

C.      **Adult-Like Behavior**

Defendant represents that he would also elicit testimony and offer evidence to show that "Victim [#2, a minor,] engaged in certain behavior prior to the time frame of the offense conduct alleged in the indictment, namely sexual activity and drug behavior in the presence of Mr. Mack and others, which would suggest to a reasonable person that Victim [#]2 was older than the age of eighteen." (Doc. No. 46 at 337.) At the hearing, defense counsel elaborated upon this proffer, explaining that the evidence would show that Victim #2 was sexually active, instigated sexual activity at parties at defendant's house, and would walk around the house topless. Counsel also indicated that this evidence would be offered to demonstrate that defendant was not recklessly indifferent to Victim #2's status as a minor.

There are several problems with this proffer, not the least of which is that it is not relevant to the question of recklessness. The "plain reading" of 18 U.S.C. § 1591 is that the provision creates strict liability where the defendant had a "reasonable opportunity to observe the [minor] victim." *United States v. Robinson*, 702 F.3d 22, 32 (2d Cir. 2012) (citing 18 U.S.C. § 1591(c)). Sections 1591(a) and (c) provide the government with three options to demonstrate that defendant knew that the victim was

under the age of eighteen: (1) the defendant possessed actual knowledge of the victim's underage status; (2) the defendant recklessly disregarded that fact; or (3) the defendant had a reasonable opportunity to observe the victim. *Id.* Because the government can establish recklessness upon defendant's observations of Victim #2, it matters not that these same observations lead defendant to believe that she was over the age of eighteen.

Also problematic is the fact that evidence of Victim #2's behavior, as seen by others, would not fit within an exception under Rule 412. Moreover, defendant cites no authority for the proposition that certain sexual conduct is reserved for those who are of legal age, and the Court is aware of none. As the government aptly notes, children voluntarily (and too often involuntarily) engage in sexual conduct. Because the proposed conduct is not critical to Mack's defense, its exclusion does not deprive defendant of his constitutional right to present a defense. *See Ogden*, 685 F.3d at 605; *Elbert*, 561 F.3d at 777. Given the dubious probative value of this evidence, the Rule 403 balancing also weighs strongly against admission.[2]

### D.        Victims were Free to Come and Go

Finally, defendant intends to offer evidence that will show that Victim #3 willingly left defendant's employ, and that Victim #4 willing left and returned to defendant on multiple occasions. While the alleged victims' physical freedom to come and go as they please may have a bearing on their consent to engage in commercial

---

[2] At the hearing, defense counsel also suggested that this evidence would be offered for the purpose of proving consent. However, because Victim #2 is a minor, she cannot consent to engage in prostitution. *See United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("Whether the children engaged in acts of prostitution before or after their encounters with [defendant] is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act.")

sexual acts, it is not the type of conduct that is subject to a Rule 412 analysis. It is, however, one type of evidence that is discussed in the government's motion, and will be addressed *infra*.

## IV.  Government's Consolidated Motion in Limine

By its motion, the government seeks to prohibit defendant from offering inappropriate arguments and defenses relating to the following: (1) jury nullification; (2) defendant's self-serving statements; and (3) defendant's potential sentences.[3]

### A.  July Nullification

The government argues that defendant should not be permitted to invite the jury to infer that they may acquit him of sex trafficking if they find that the victims: (1) initially agreed to engage in commercial sex acts; (2) had opportunities to leave; or (3) received some benefit from the activity because such evidence would not support a valid defense to the charges. At the motion hearing, the government clarified its position, explaining that it is not attempting to exclude such evidence from trial. Rather, it merely seeks an advance ruling that would prohibit defendant from arguing that such evidence necessarily defeats a charge of sex trafficking.

A brief discussion regarding the relevance of the subject conduct is in order. The fact that the victims may have initially agreed to engage in commercial sex acts does not preclude a subsequent charge for sex trafficking based on later non-consensual acts. In *United States v. Marcus*, 487 F. Supp. 2d 289 (E.D. N.Y. 2007),

---

[3] The government also moved to preclude defendant from offering evidence of the victims' sexual conduct with individuals other than defendant. In light of the Court's analysis of defendant's in limine motion, that portion of the government's motion is granted.

.

*vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008), the court rejected defendant's argument that the existence of a prior consensual relationship involving welcomed force and violence rendered it impossible for him later to be charged with non-consensual force or coercion to engage in a commercial sex act. *Id.* at 309; *see Valenzuela*, 495 F. App'x at 820 ("Even if some of the victims consented initially, Appellants violated Sec. 1591 by continuing to harbor and maintain them once Appellants realized that force, fraud, or coercion [or threats thereof] would have to be used to cause the girls to engage in a commercial sex act.")

With respect to the opportunity to leave or escape, in *United States v. Bibbs*, 564 F.2d 1165, 1167-68 (5th Cir. 1977), the court held that "the law takes no account of the means of coercion. Various combinations of physical violence and of threats of physical violence for escape attempts are sufficient . . . Therefore, a defendant is guilty of holding a person to involuntary servitude if the defendant has placed him in such fear of physical harm that the victim is afraid to leave, regardless of the victim's opportunities for escape." In *Bibbs*, the defendants argued that the district court erred in failing to grant a judgment of acquittal on the charge of involuntary servitude where there was evidence that the victims had opportunities to leave. The Fifth Circuit rejected the argument, noting that there was evidence that the victims were beaten, or threatened with beatings, if they attempted to escape. *Id*. at 1168; *see also United States v. Booker,* 655 F.2d 562, 567 (4th Cir. 1981) ("The availability of escape, as the history of slavery has shown, or even a situation where the discipline of terror is not constantly enforced, does not preclude a finding that persons are held as slaves.").

While the Court finds that evidence from any one of these categories may

be relevant to the question of consent, and defendant shall be permitted to offer any such evidence at trial, the existence of such evidence will not necessarily preclude a sex trafficking conviction. Defendant will not be permitted to argue to the contrary, and the jury will be properly instructed on their consideration of this evidence.

B.　　　**Self-serving Exculpatory Statements**

The government seeks to prevent defendant from offering self-serving exculpatory statements made during certain intercepted calls under the guise of FED. R. EVID. 106, the rule of completeness. While FED. R. EVID. 801(d)(2) permits the introduction of a defendant's statements as non-hearsay admissions of a party opponent, "[t]he rules [of evidence] do not . . . provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996); *see United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 802(d)(2) . . . does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses.") (emphasis in original).

The other rule in play is Rule 106, which provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at the time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." FED. R. EVID. 106. The Advisory Committee notes explain that the purpose of the rule is to avoid a "misleading impression created by taking matters out of context." *Id.* (Advisory Committee Notes).

However, "the doctrine [of completeness] 'does not make inadmissible

evidence admissible.'" *United States v. Cosgrove*, 637 F.3d 646, 661 (6th Cir. 2011) (quoting *United States v. Howard*, 216 F. App'x 463, 472-73 (6th Cir. 2007)). Instead, other portions of conversations or other forms of correspondence are admissible if "necessary to correct a 'misleading impression' caused by the 'incomplete character' of the portion of the statement admitted. . . ." *Cosgrove*, 637 F.3d at 661 (quoting *Howard*, 216 F. App'x at 472); *see, e.g., United States v. Gallagher*, 57 F. App'x 622, 628-29 (6th Cir. 2003) (self-serving exculpatory statements were not required for completeness and were properly excluded as inadmissible hearsay); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir.) (holding no abuse of discretion in excluding part of a prior statement as irrelevant and inadmissible hearsay), *cert. denied*, 454 U.S. 830 (1981).

"Because neither the Constitution nor the rule of completeness requires admission of [the] entire statement once any portion is admitted in a criminal prosecution, courts have required defendants to demonstrate with particularity any unfairness in selective admission of the prior … statement." *United States v. Fisher*, Case No. 06-CR-20415-2, 2008 WL 2605405, at *1 (E.D. Mich. July 1, 2008) (citing *United States v. Branch*, 91 F.3d 699 (5th Cir. 1999)). In determining whether the moving party has met its burden, courts often look to whether the omitted evidence is necessary to: (1) explain the excerpted portion; (2) place the excerpted portion in context; (3) avoid misleading the finder of fact; and (4) insure a fair and impartial understanding. *See United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996), *rev'd on other grounds*, 531 U.S. 198 (2001); *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).

While the Court need not permit the entirety of any particular call to be admitted at trial, *see Trepel v. Roadway Express*, 40 F. App'x 104, 110 (6th Cir. 2002), it will permit the immediate admission of any un-played portion of a wire communication, or other type of communication or correspondence, that is necessary to correct any "misleading impression" caused by the introduction of only part of the communication. Because as of the date this issue was argued before the Court the government had yet to identify what portions of each call it intends to offer at trial, defendant was unable to identify any other portion he wishes to offer for purposes of "completeness." Therefore, if the government has not already done so, it is directed to immediately provide defendant with the transcript of any call it intends to offer a trial, specifically identifying the portion of the call it plans to play for the jury. Defendant shall then file with the Court the transcripts of such calls and argument as to why the rule of completeness requires the playing of the call in its entirety or playing more than the government had intended to present. Following receipt of these submissions, the Court will review the transcripts and advise the parties on the record as to its ruling on each such call prior to the testimony of the first witness at trial. The Court, therefore, reserves ruling on this portion of the government's motion for now.

C.      **Potential Sentences**

Finally, the government moves for a ruling precluding defendant from making any references to potential sentences he may receive if he is convicted of the charged offenses. Of course, such evidence is routinely excluded from criminal trials. *See, e.g., United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001); *see also* Sixth Circuit Pattern Jury Instruction, 8.05 (Jury Instructions warn juries not to "even consider

the possible punishment in deciding [their] verdict.") At the hearing, defense counsel represented that they do not intend to elicit testimony relating to any potential sentences defendant could receive if he were conviction, but plan to cross-examine co-defendant Onysko regarding her plea agreement as to potential bias and the benefits she is expecting to receive from her cooperation.

Recognizing that defendant has a right guaranteed by the Confrontation Clause to explore bias on cross-examination, the Court will permit defendant to inquire into bias and his co-defendant's possible motivations to testify. This inquiry may include the nature of the plea agreement, whether she has been sentenced or is awaiting sentencing, and whether she has received or expects to receive certain benefits in exchange for her testimony. Prior to embarking on such a line of questioning, however, defense counsel shall ask to approach the bench so that the Court may confirm with counsel the contours and limitations of this line of examination.

**IT IS SO ORDERED**.

Dated: January 31, 2014

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**