**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:13CR278 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| JEREMY A. MACK, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the suppression motion of defendant Jeremy Mack, which challenges the April 9, 2013 search of a private residence and a hotel room, both located in Elyria, Ohio (Doc. No. 98). By this motion, defendant also challenges his warrantless arrest, also occurring on April 9, 2013. The government opposes the motion (Doc. No. 115), and defendant filed a supplement to his motion on January 24, 2014 (Doc. No. 122). The Court conducted a hearing on the motion on January 29, 2014. At the conclusion of the hearing, the Court took the matter under advisement.

I.    BACKGROUND

On April 8, 2013, Detective John Davidson, a police officer with the Elyria Police Department's Neighborhood Impact and Narcotics Unit, applied for a warrant to search a house located at 8 Tattersal Court, Elyria, Ohio. The house was believed to be the residence of Mack. In support of his application, Detective Davidson swore out an affidavit wherein he explained that he had reason to believe that evidence of

drug trafficking would be found at the residence. (Gov. Ex. 1, Affidavit of Det. Davison.) At the hearing, Detective Davidson testified that he had been involved in an on-going investigation of possible drug activity by Mack. His affidavit detailed that, on February 3, 2013, Mack was pulled over in a vehicle seen leaving 8 Tattersal Court. A search of the vehicle revealed the presence of crack and powder cocaine. Immediately following the search, Mack was arrested, and charged with drug trafficking. The affidavit went on to provide that, within 48 hours of the preparation and submission of the application, officers from the Elyria Police Department supervised a "controlled buy" at 8 Tattersal Court between a confidential informant—who had "proven to be reliable as he/she ha[d] provided information and services relative to illegal drug trafficking to Law Enforcement which ha[d] been corroborated through independent means and arrests"—and defendant Mack. (Gov. Ex. 1 at ¶¶ 3-4.) The affidavit detailed the method by which officers monitored the buy. Prior to the sale, officers searched the informant to determine that he or she did not have money or drugs. The informant was supplied with marked bills, monitored with electronic devices, and was searched immediately after the buy. The buy was successful as the informant was able to acquire heroin from Mack.

The affidavit sought permission to seize computers, cell phones, records, currency, contraband, and any other evidence of illicit trade or possession of narcotics. Lorain County Common Pleas Judge James Miraldi issued a search warrant for the residence, and the search warrant was executed on April 9, 2013. (Gov. Ex. 2, Search

Warrant.) Detective Davidson was part of the team that executed the warrant.[1] He testified that officers arrived at the residence at approximately 7:15 AM to conduct the search. The search yielded heroin, cash, credit cards, metal spoons, syringes, miscellaneous paperwork, scales, cell phones, laptops, and other electronic devices. (Gov. Ex. 3, Elyria Police Property Report.)

Sargent Detective James Welsh is the commander of the Narcotics Unit, and he supervised the investigation into Mack's alleged drug activity. He was also present during the April 9, 2013 search of 8 Tattersal Court. He testified that after the search was underway, three individuals arrived at the residence in a Cadillac. Defendant was seated in the front passenger seat, co-defendant Ashley Onysko was driving the vehicle, and a third passenger—identified in this case as Victim No. 4—was also present in the backseat. Sargent Welsh met the vehicle in the driveway of the residence and approached the vehicle's occupants. He advised Mack that he was under arrest for drug trafficking, and advised Onysko that she was under arrest for permitting drug abuse.

After he informed Onysko of her constitutional right to remain silent, Sargent Welsh asked Onysko if she had anything illegal on her person. She volunteered that she had concealed heroin in her brazier. She was permitted to retrieve the drugs, at which time she also produced from her person a motel room key. Onysko told Sargent Welsh that the key was to a motel room that she had stayed in the night before. Upon inquiry by Sargent Welsh, Onysko informed him that there was nothing illegal in the

___

[1] Detective Davidson testified that, following the search, he returned the warrant to Lorain County Assistant Prosecutor Natasha Ruiz. He explained that he returned the warrant to the county prosecutor's office because it was to be placed under seal. He further testified that he only recently learned that there was a problem with the return, and represented that he could resubmit the warrant by 4:00 PM on January 30, 2014.

hotel room, and she gave verbal consent for officers to search the hotel room. When asked if Onysko believed that there would presently be anyone in the room, she indicated that she did not know. Sargent Welsh testified that Onysko was not asked to give written consent for the search, and further conceded that Elyria Police Reports do not reflect that Onysko orally consented to the search.

Sargent Welsh testified that he instructed Detectives Fairbanks and Grove to search the motel room. Detective Michael Fairbanks testified that Sargent Welsh advised him that Onysko had given her consent to search the hotel room. According to Detective Fairbanks, he and Detective Grove knocked on the motel room door, and a female voiced inside invited them to enter. Using the room key, the two officers gained entrance and announced that they were police officers. Once inside the room, the officers observed a female, who was initially sitting on the edge of the bed but eventually got under the covers and lied down. According to Detective Fairbanks, the woman appeared startled by their presence, but did not appear to be under the influence of drugs or alcohol and was communicative and cooperative.[2] In response to an inquiry as to whether there was anything illegal in the room, the female advised the officers that the drapes were sometimes used to conceal drugs. She also volunteered that she was a heroin user, and that her "works"—her drug paraphernalia—was located in a drawer in the nightstand between the two beds. She opened the drawer to reveal the drawer's contents. She then went around the room, opening other drawers and containers, and the officers collected

---

[2] Detective Fairbanks, a sixteen year veteran of the police force and a member of the Neighborhood Impact and Narcotics Unit, had been a detective with the Elyria Police Department for 10 years. The Court finds that Detective Fairbanks was qualified to assess whether the female occupant of the motel room was under the influence of drugs at the time of the search, such that she would not have been capable of providing voluntary consent.

the contraband that was contained in these various locations. Detective Fairbanks further testified that, upon showing the officers condoms in a drawer, the female occupant "broke down" and informed the officers that she was forced to prostitute herself to pay for her drug addiction. She was eventually transported to the Elyria Police Department.

On April 11, 2013, Elyria Police Detective Michael Groomes applied for and obtained a search warrant to search the electronic devices that were part of the fruits of the April 9, 2013 search of 8 Tattersal Court and the Ramada Inn motel room. (Gov. Ex. 5, Affidavit of Det. Groomes; Gov. Ex. 6, Search Warrant.) Detective Groomes testified that he returned the warrant to Assistant Prosecutor Mary Slanczka of the Lorain County Prosecutor's Office. He further testified that he only recently became aware that the Lorain County Clerk's Office has no record of the return. At the hearing, he represented that he would be willing and able to attempt to return the warrant for a second time, and would do so by 4:00 PM on January 30, 2014.[3]

On May 7, 2013, a complaint issued charging defendant Mack with conspiracy to commit fraud, in violation of 18 U.S.C. § 371; sex trafficking of children, and sex trafficking of women by force, fraud, or coercion, in violation of 18 U.S.C. § 1591; and distribution of controlled substances, in violation of 21 U.S.C. § 841. Mack was subsequently charged with one additional count—tampering with a witness and obstructing justice, in violation of 18 U.S.C. § 1512.

---

[3] At the continuation of the motion hearing and final pre-trial conference, on January 30, 2014, the government presented evidence that showed that Elyria police officers successfully returned the warrants on January 29, 2014. (Gov. Ex. 9.)

**II.      GOVERNING LAW AND DISCUSSION**

Defendant Mack seeks to suppress all evidence seized during the April 9, 2013 search of his residence and the motel room, as well as the April 11, 2013 search of the electronic devices seized in the April 9 searches. He also challenges his warrantless arrest. Specifically, Mack complains that: (1) officers violated Rule 41 of the Ohio Rules of Criminal Procedure by failing to "promptly" return the warrant; (2) officers lacked authority to search the Ramada Inn motel room; and (3) there was no probable cause to support his arrest.

The Fourth Amendment mandates that there must be probable cause for any search and seizure. U.S. CONST. AMEND. IV. "Probable cause has been defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Pardo*, 52 F.3d 120, 122-23 (6th Cir. 1995) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause is based on the totality of the circumstances; it is a 'practical, non-technical concept that deals with the factual and practical considerations of everyday life.'" *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *Fraizer,* 423 F.3d at 531).

"To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Fraizer*, 423 F.3d 526, 531 (6th Cir. 2005) (internal quotation and citation omitted). Probable cause to obtain an arrest warrant or to conduct a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in

reasonably trustworthy information and sufficient in itself to warrant a belief by a prudent person that an offense has been or is being committed by the suspect. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964).

A.      *The Return of the Warrants*

Ohio R. Crim. P. 41 addresses the mechanics of the issuance of warrants for the search and seizure of property. Rule 41(D) provides, in relevant part:

> The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or shall leave the copy and receipt at the place from which the property was taken. *The return shall be made promptly and shall be accompanied by a written inventory of any property taken*. . . .

Ohio R. Crim. P. 41(D) (emphasis added). The purpose of the rule is twofold: (1) to make the warrant and affidavit available to a defendant in preparation of trial; and (2) to account for any property seized pursuant to the warrant. *United States v. Dudek*, 530 F.2d 684, 691 (6th Cir. 1976).

Defendant argues that the Elyria Police Department's apparent failure to promptly return the warrants justifies suppression of the fruits of the search. However, the Sixth Circuit has specifically held that the return is a ministerial act, and a state police department's failure to abide by this state procedural rule does not implicate the Fourth Amendment. *Dudek*, 530 F.2d at 691 ("the failure to make a prompt return and to verify the inventory [has] no relation at all to the command of the Fourth Amendment which bars unreasonable searches and seizures"); *see also United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971) (ruling that the return of warrant—under the federal counterpart to Ohio R. Crim. P. 41(D)—was a "ministerial" act that, absent a showing of prejudice,

did not void the warrant); *Evans v. United States*, 242 F.2d 534, 536 (6th Cir. 1957) (same).

Defendant acknowledges the decision in *Dudek* as binding authority for this Court, but, latching onto that decision's holding that "nonconstitutional, nonprejudicial and inadvertent failures to follow the post-search and seizure requirements of Ohio's rule which are involved here do not require application of the federal exclusionary rule[,]" suggests that an intentional failure to return the warrants might rise to the level of a Fourth Amendment violation. (Doc. No. 98 at 1280 [citing *Dudek*, 530 F.2d at 691].) The Court need not venture down this road because the Court finds credible the testimony of Detectives Grooms and Davidson that they attempted in good faith to return the warrants to the local prosecutor's office, but that for some unknown reason, the relevant documents cannot be located in the county clerk's office.[4] Moreover, defense counsel conceded at the hearing that defendant had received copies of the warrants, the supporting affidavits, and the inventories of the seized evidence as part of the government's Rule 16 discovery disclosures, and these same documents were relied upon by defendant in bringing the present motion to suppress. The purpose behind Ohio's ministerial rule having been satisfied, defendant can show no resulting prejudice. Defendant's first ground offered in support of suppression is rejected.

---

[4] In fact, in his motion, defendant underscores the fact that the officers in *Dudek* attempted to return the warrant, but were unable to do so because the courthouse was closed. (Doc. No. 98 at 1280 [citing *Dudek*, 530 F.3d at 686].) Similarly here, the Elyria Police Department attempted in good faith to return the warrants.

### B.    Consent to Search the Motel Room[5]

With respect to the search of the motel room, defendant concedes, as he must, that a third party with actual authority over property may validly consent to its search provided that the consent was voluntarily given. *United States v. Matock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). He maintains, however, that he requested an evidentiary hearing for the purpose of determining whether co-defendant Onysko or the female occupant had authority, and whether voluntary consent was actually given.

The Court is satisfied from the testimony at the evidentiary hearing that both Onysko and the female occupant—later identified as an alleged victim in this case— gave their voluntary consent to search the motel room, and that they had the authority to do so. Specifically, the Court credits the testimony of Sargent Welsh, who testified that Onysko gave voluntary verbal consent to search the motel room, after indicating that she had occupied the room. *See, e.g., United States v. Canipe*, 569 F.3d 597, 604 (6th Cir. 2009) (seizure and admission of evidence proper because consent was voluntary and therefore was valid when defendant unequivocally told investigator that there "wouldn't be a problem" with search of his truck). Additionally, the Court finds credible Sargent Welsh's candid concession that the fact that Onysko gave oral consent was inadvertently

---

[5] At the outset, the Court notes that there remains a question as to whether defendant Mack has standing to challenge the search of the motel room, based upon evidence Mack presented at the hearing—and will be discussed in detail *infra*—suggesting that he was otherwise engaged in a state court matter the day before. Nonetheless, the Court considers his arguments in favor of suppression.

omitted from the police records involving the search, and that he wished, with the benefit of hindsight, that this detail had been memorialized somewhere in the records from the searches.[6]

The Court also finds that credible evidence supports a finding that the female occupant of the motel room voluntarily gave her consent to search the room, and that she had the authority to do so. Detective Fairbanks testified that the female occupant was clearly staying in the motel room and that she actually obviated the need to search the room by voluntarily opening drawers and offering their contents to the officers. Because the Court finds that the evidence seized from the motel room was not obtained in violation of the Fourth Amendment, the evidence will not be suppressed.

### C.      Probable Cause for the Arrest

Finally, defendant complains that he was arrested without a warrant and without probable cause. The government insists that there was probable cause for the arrest because of evidence that defendant recently sold heroin to a confidential informant in a controlled buy. When an officer has probable cause to believe that an individual has committed a criminal offense, he may arrest the individual without running afoul of the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 1557, 149 L. Ed. 2d 549 (2001); *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959) ("Probable cause [to arrest] exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been

---

[6] Detective Davidson testified credibly that he did not mention Onysko's oral consent to search the motel room in his narrative of the 8 Tattersal Court search (Gov. Ex. 8 at pg. 12) because the consent related to the separate search of the motel room.

committed.").[7] At the hearing, defendant challenged the government's evidence as to the controlled buy, identifying court records showing that, on April 8, 2013, Mack had an appearance on a state criminal case. The affidavit prepared by Detective Davidson, however, merely indicated that the controlled buy took place "[w]ithin the past 48 hours," and did not suggest that it necessarily took place on April 8, 2013 or at any particular time of day. Because there was probable cause to arrest defendant Mack for suspected drug trafficking, his arrest was lawful.

For all of the foregoing reasons, defendant Mack's motion to suppress is denied in its entirety.

**IT IS SO ORDERED**.

Dated: January 31, 2014

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[7] Additionally, the Court finds that defendant's attack upon the validity of his arrest is moot. The remedy for a constitutionally deficient arrest is the suppression of all obtained in connection with the arrest. *See Mapp v. Ohio*, 367 U.S. 643, 654, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (If an officer arrests an individual without probable cause, evidence obtained in the course of the unconstitutional arrest is inadmissible.) Because the evidence that is at issue in the present motion was seized incident to the search warrant (8 Tattersal Court) and consent (motel room)—and not incident to Mack's arrest—defendant would not be entitled to its suppression.